UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MARILYN MERRIDTH                    CIVIL ACTION

VERSUS                              NO.  06-7123

ALLSTATE INDEMNITY COMPANY, F.      SECTION "R" (3)
JOHNSON, JR., INSURANCE AGENCY,
and ABC INSURANCE COMPANY


This Document applies to the following civil actions pending in
the Eastern District of Louisiana: 06-7123, 06-7385, 06-7525, and
06-7678.


**<u>ORDER AND REASONS</u>**

Before the Court are motions to remand the above-listed

cases.  Because these motions concern identical questions of law,

the Court has consolidated its ruling in these matters for the

sake of efficiency.  For the following reasons, the Court GRANTS

plaintiffs' motion in Civ. Docket No. 06-7385, and DENIES the

other motions.


**I.   BACKGROUND**

Plaintiffs in these cases are Louisiana property owners who

suffered damage to their property during Hurricane Katrina and

who have sued their insurance providers under their homeowner's
or commercial property policies.  Plaintiffs in all of the
actions listed above have sued both their insurers and the agents
who sold and/or renewed their policies.  The insurers lack
citizenship or a principal place of business in Louisiana.  The
insurance agents are citizens of Louisiana.  The parties are thus
not completely diverse, a requirement for a federal court to have
jurisdiction under 28 U.S.C. § 1332.  *See McLaughlin v.
Mississippi Power Co.,* 376 F.3d 344, 353 (5th Cir. 2004).
Plaintiffs filed their claims in Louisiana state court, and
defendants then removed them.  Plaintiffs have filed motions to
remand these matters to state court.  In all of the cases,
defendants assert that federal jurisdiction is proper under
diversity jurisdiction pursuant to 28 U.S.C. § 1332 because the
nondiverse insurance agent defendants have been joined
improperly.  When the Court finds that it has jurisdiction over a
case on this basis, the Court need not address defendants'
alternative theories as to why federal jurisdiction is
appropriate in each matter.

**II.  LEGAL STANDARDS**

    **A.  Applying Louisiana Law**

    Because jurisdiction is based on diversity, Louisiana law

2

applies to the substantive issues before the Court.  *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).  In Louisiana, the sources of law are legislation and custom.  *Shaw Constructors v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 546 (5th Cir. 2004). These authoritative or primary sources of law are to be "contrasted with persuasive or secondary sources of law, such as [Louisiana and other civil law] jurisprudence, doctrine, conventional usages, and equity, that may guide the court in reaching a decision in the absence of legislation and custom." *Id.* (*quoting* La. Civ. Code art. 1*).*  In Louisiana, "courts must begin every legal analysis by examining primary sources of law: the State's Constitution, codes, and statutes."  *Id.* (*quoting Prytania Park Hotel, Ltd. v. General Star Indem. Co.,* 179 F.3d 169, 174 (5th Cir. 1999)).  To make an 'Erie guess' on an issue of Louisiana law, the Court must "employ the appropriate Louisiana methodology" to decide the issue the way that it believes the Supreme Court of Louisiana would decide it.  *Id.* (*quoting Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 197 (5th Cir. 2003)).

**B.   Removal**

A defendant may generally remove a civil action filed in state court if the federal court has original jurisdiction over the action.  *See* 28 U.S.C. § 1441(a).  The removing party bears

3

the burden of showing that federal jurisdiction exists.  *See Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995). In assessing whether removal was appropriate, the Court is guided by the principle, grounded in notions of comity and the recognition that federal courts are courts of limited jurisdiction, that removal statutes should be strictly construed. *See, e.g., Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002); *Neal v. Kawasaki Motors Corp.*, 1995 WL 419901, at *2 (E.D. La. 1995).  Although the Court must remand the case to state court if at any time before final judgment it appears that it lacks subject matter jurisdiction, the Court's jurisdiction is fixed as of the time of removal.  28 U.S.C. § 1447(c); *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 456 (5th Cir. 1996).

C.   **Improper Joinder**

When a nondiverse party is properly joined as a defendant, a defendant may not remove under section 1332.  However, a defendant may remove by showing that the nondiverse party was improperly joined.  *Smallwood v. Il. Cent. R.R. Co.*, 352 F.3d 220, 222 (5th Cir. 2003).  Because the doctrine is a narrow exception to the rule of complete diversity, the burden of demonstrating improper joinder is a heavy one.  *Id*.  Improper joinder may be established by showing: (1) actual fraud in

4

pleading jurisdictional facts; or (2) the inability of the plaintiff to establish a cause of action against the nondiverse defendant.[1]  *Ross v. Citifinancial, Inc.*, 344 F.3d 458, 461 (5th Cir. 2003).  In *Ross*, the Fifth Circuit clarified the standard for finding improper joinder when a defendant alleges that plaintiff is unable to state a claim against the nondiverse defendant.  *Id*. at 462-63.  The Court must determine whether there is arguably a reasonable basis for predicting that state law might impose liability on the nondiverse defendant.  *Id*. *(citing Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002)).  This means that there must be a reasonable possibility of recovery, not merely a theoretical one.  *Id.*  The standard for evaluating a claim of improper joinder is similar to that used in evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  *Id.* The scope of the inquiry for improper joinder, however, is broader than that for Rule 12(b)(6), because the Court may "pierce the pleadings" and consider summary judgment-type evidence to determine whether the plaintiff has a basis in fact

---

[1] The Fifth Circuit now officially refers to "fraudulent joinder" as "improper joinder."  *See Melder v. Allstate Corp.*, 404 F.3d 328, 329 (5th Cir. 2005).  However, the term "fraudulent joinder" is still used in many Fifth Circuit cases, causing no shortage of confusion.

for his or her claim.  *Id.* (*citing Travis v. Irby*, 326 F.3d 644, 648-49 (5th Cir. 2003); *see also Hornbuckle v. State Farm Lloyds*, 385 F.3d 538, 542 (5th Cir. 2004).  In conducting this inquiry, the Court "must also take into account all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff." *Travis*, 326 F.3d at 649. In addition, the Court must resolve all ambiguities of state law in favor of the nonremoving party. *Id*.


## III. DISCUSSION

### A.    06-7123: Merridth v. Allstate

Plaintiff Marilyn Merridth sued Allstate, her homeowner's insurer, and F. Johnson Jr. Insurance Agency, her insurance agent, after Hurricane Katrina rendered her home and contents a total loss.  At the time Hurricane Katrina struck Louisiana, plaintiff had a homeowner's policy written by Allstate with the following limits of liability:  $137,000 for the dwelling; $13,700 for other structures; and $68,500 for personal property. In addition, plaintiff maintained a standard flood insurance policy through Allstate for coverage in the amount of $27,000.

In her complaint, plaintiff alleges that defendant Johnson, a Louisiana domiciliary, acted negligently by (1) failing to advise her of the availability and need for additional flood

6

coverage, and (2) directly or indirectly informing her that her policy would cover "all hurricane damages." (Rec. Doc. 1, Ex. A, ¶¶ 30-1). Allstate contends that Johnson is improperly joined because there is no reasonable basis upon which plaintiff can state a claim under Louisiana law against Johnson. More specifically, defendants allege that plaintiff's claims against Johnson are perempted under La. Rev. Stat. § 9:5606. This statute provides in pertinent part:

> No action for damages against any insurance agent . . . whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide insurance services shall be brought unless filed . . . within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered. However, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.

La. Rev. Stat. § 9:5606.

Defendants submitted an unrebutted affidavit that plaintiff initially purchased her homeowner's policy on November 26, 1974 and her standard flood insurance policy on March 19, 1999. (Rec. Doc. 1, Ex. A, ¶¶ 7, 9). This affidavit further demonstrates that plaintiff has not made any significant changes to either of these policies since June 2, 2000, when Johnson took over a previous agent's book of business. (*Id.* at ¶¶ 7-10). Defendants assert that any relevant acts in this case therefore occurred no

later than June 2, 2000, when Johnson assumed responsibility for plaintiff's account.  They also contend that this case is governed by the principle that subsequent renewals of insurance policies do not restart the preemptive period for acts and omissions committed at the time of the initial purchase.  *See Biggers v. Allstate Ins. Co.*, 886 So.2d 1179, 1182-83 (La. Ct. App. 2004); *Bel v. State Farm Mut. Auto. Ins. Co.*, 845 So.2d 377, 382-83; *Bordelon v. The Indep. Order of Foresters*, 2005 WL 3543815, at *3 (E.D. La. 2005).  Because plaintiffs did not commence this action in state court until August 8, 2006, defendants allege that the three-year limitation under La. Rev. Stat. § 9:5606 bars plaintiff's claims against Johnson.

In determining whether there is an arguably reasonable basis for predicting that state law might impose liability, the Court begins by looking at the allegations of the complaint. *Smallwood*, 385 F.3d at 573.  Here, plaintiff alleges in her complaint that Johnson was negligent and breached his fiduciary duty, but she fails to identify when this alleged conduct occurred.  (Rec. Doc. 1, Ex. A, ¶¶ 30-1).  The Court therefore cannot determine from the face of the complaint whether plaintiff's claims are perempted under Louisiana law. Accordingly, the Court may "pierce the pleadings and conduct a summary inquiry." *Smallwood*, 385 F.3d at 573.

8

Johnson submitted an unrebutted affidavit which states that after he took over plaintiff's account on June 2, 2000, plaintiff renewed both her homeowner's policy and her standard flood insurance policy without any significant changes.[2]  (Rec. Doc. 21, Ex. A, ¶¶ 8 and 10).  Based on plaintiff's allegations, Johnson's omissions, misrepresentations, or neglect occurred when plaintiff first renewed these policies with Johnson acting as her insurance agent.  Plaintiff renewed her homeowner's policy annually on November 26, while she renewed her standard flood insurance policy annually on March 19.  Thus, any alleged misconduct would have occurred, at the latest, on March 19, 2001, when plaintiff first renewed her standard flood insurance policy with Johnson as her agent.

Under the express terms of La. Rev. Stat. § 9:5606, a plaintiff's claim is perempted if it is not brought within three years of the agent's act, omission, or neglect.  The three-year peremptive period applies regardless whether a plaintiff brings

_____

[2] Johnson's affidavit points out that several minor changes have been made to plaintiff's standard flood policy since its inception.  On February 12, 2003, the name of plaintiff's mortgage company was changed.  On May 17, 2006, the mortgagee was removed as an additional insured and plaintiff changed her address.  (Rec. Doc. 21, Ex. A, ¶10, n. 1).  The Court finds these changes to be immaterial to the issue presented and therefore not an intervening act sufficient to restart the peremption period.

his or her claim within one year of discovering the cause of action.  La. Rev. Stat. § 9:5606.  Since plaintiff did not sue Johnson until August 8, 2006, her claims are perempted because they were not brought within three years of March 19, 2001, the date of Johnson's alleged act, omission, or neglect.  Moreover, there are no allegations of any subsequent misrepresentations or other affirmative misconduct by Johnson when it renewed the insurance policies.  The renewals, therefore, do not restart the preemptive period.  *See Biggers*, 886 So.2d at 1182-83.  The Court finds that plaintiff has no reasonable possibility of recovery against Johnson, and joinder is improper.  The Court has jurisdiction over this matter.

**B.   06-7385: Kevin F. Darr v. Allstate**

Plaintiffs Kevin F. Darr, M.D., LLC; Covington Properties, LLC; and three orthopaedic surgeons who provide medical care at Covington Orthopaedic & Sports Medicine Clinic sued Allstate, their business insurer, and Terry King, their insurance agent. Allstate contends that King is improperly joined because (1) plaintiff cannot state a claim against King, (2) plaintiff's claims are preempted, and (3) defendants are misjoined under the doctrine announced in *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000).

It is undisputed that Allstate issued the initial business insurance policy at issue in June 2003.  Plaintiffs allege that they met face-to-face with King before they purchased the policy to describe the coverage they sought, after which King decided the type of policy to procure.  (Rec. Doc. 1, Ex. A, at ¶ VII). Plaintiffs allege that King then issued the policy to Covington Orthopaedic, LLC, which is an entity that does not exist.  (*Id.*) In December 2005, King allegedly attempted to reform the policy to cover Kevin F. Darr, M.D., LLC and Covington Orthopaedic Properties, LLC, retroactively for the policy's one-year term beginning in July 2005, so that the correction would apply to damages sustained during Hurricane Katrina.  (Rec. Doc. 6, at 7). Plaintiffs contend that when he did so, King again failed to procure the requested coverage for all of the parties that maintained an interest in the Covington Orthopaedic Clinic. (*Id.*).

The Court finds that King has not been joined improperly. Under Louisiana law, an insurance agent has a duty to use reasonable diligence in attempting to place the insurance requested and to inform his or her client promptly if the agent does not procure the requested insurance.  *Karam v. St. Paul Fire & Marine Ins. Co.*, 281 So.2d 728, 730 (La. 1973); *see also Three X, L.L.C. v. Lexington Ins. Co.*, 2006 WL 3142276 (E.D. La. 2006).

11

A "client may recover from the agent the loss he sustains as a result of the agent's failure to procure the desired coverage if the actions of the agent warranted an assumption by the client that he was properly insured in the amount of the desired coverage." *Karam*, 281 So.2d at 730-31; *see also Huval v. Offshore Pipelines, Inc.*, 86 F.3d 454, 457 (5th Cir. 1996).

Defendants agree that King, after Hurricane Katrina, reissued the insurance policy in the names of Covington Orthopaedic Properties, LLC and Kevin F. Darr, M.D., LLC, retroactive to July 2005. (Rec. Doc. 4, Ex. 1). As noted, plaintiffs allege that defendant still ignored other individuals who had an interest in Covington Orthopaedic Clinic, and he thus failed to protect all of the members who required coverage. Plaintiffs' allegation with respect to King's December 2005 conduct arguably states a claim that King was negligent in his effort to reform the policy to correct his prior failure to procure the proper coverage. Broadly construing plaintiffs' petition in their favor, the Court finds there is an arguably reasonable basis for predicting that state law might impose liability upon King under *Karam*.

Based on these same allegations and evidence, the Court likewise finds that plaintiffs' claims are not perempted under La. Rev. Stat. § 9:5606. Plaintiffs have provided unrebutted

12

evidence that King reissued plaintiffs' policy after Hurricane
Katrina on December 29, 2005, in the names of Covington
Orthopaedic Properties, LLC and Kevin F. Darr, M.D., LLC.
Moreover, plaintiffs allege that King was negligent in reissuing
their policy in those names because it still failed to protect
some members of the Covington Orthopaedic Clinic.  The Court
finds that plaintiffs' allegations regarding the December 2005
reissuance of plaintiffs' policy arguably state a new infraction
by King.  Defendants' arguments regarding peremption that are
based on pre-Katrina conduct are therefore without merit in light
of King's alleged actions in December 2005.  Because plaintiffs
filed their cause of action in state court on August 28, 2006,
the Court concludes that plaintiffs' claims are not perempted
under La. Rev. Stat. § 9:5606.

     Finally, Allstate asserts that King is improperly joined
because plaintiffs' claims against Allstate are unrelated to
their claims against King.  Allstate relies on the Eleventh
Circuit's decision in *Tapscott*, 77 F.3d at 1360.  In *Tapscott*,
the Eleventh Circuit found that when a diverse defendant is
joined with a nondiverse defendant as to whom there is no joint,
several or alternative liability, and when the claim against the
diverse defendant has no real connection to the claim against the
nondiverse defendant, this can serve as a third type of

fraudulent joinder in addition to the two identified in *Ross v. Citifinancial, Inc.*, 344 F.3d 458, 461 (5th Cir. 2003).[3]  In a similar factual context, this Court rejected an insurer's contention that claims against an insurance company and its agent arising from an alleged lack of coverage for damages sustained during Hurricane Katrina were improperly joined.  *See Botnick*, 2006 WL 2947917, at *7.  That decision was squarely in line with the holdings of other courts in this district faced with this issue.  *See, e.g., Richmond v. Chubb Group of Ins. Cos.*, 2006 WL 2710566 (E.D. La. Sept. 20, 2006) (Africk, J.); *Radlauer v. Great N. Ins. Co.*, 2006 WL 1560791 (E.D. La. May 16, 2006) (Zainey, J.); *Schwartz v. Chubb & Sons, Inc.*, 2006 WL 980673 (E.D. La. Apr. 11, 2006) (Fitzwater, J.[4]).  The Court finds no reason to reach a different result here.  Therefore, Allstate has failed to carry its burden of demonstrating that joinder of King was improper.  The Court thus does not have jurisdiction on the basis of the diversity of the parties.  *See* 28 U.S.C. § 1332.  This action is remanded to state court.

---

[3] In *Ross*, the Fifth Circuit stated that fraudulent joinder may be established by showing: (1) actual fraud in pleading jurisdictional facts; or (2) the inability of the plaintiff to establish a cause of action against the nondiverse defendant. 344 F.3d at 461.

[4] Judge Fitzwater sat by designation due to the recusal of plaintiff's colleagues in this District.  2006 WL 980673, at *1.

C.    **06-7525: Mazou v. State Farm**

Plaintiff Shannon Mazou sued State Farm, her homeowner's insurer, and Rodney Cosse, her insurance agent, after her property was damaged by Hurricane Katrina.  In her complaint, plaintiff alleges that defendant Cosse, a person domiciled in Louisiana, failed to properly advise her regarding her insurance options.  (Rec. Doc. 1, Ex. A, ¶ XVII).  More specifically, plaintiff alleges that Cosse negligently failed to provide her with the option of purchasing excess flood insurance and failed to inform her that damages caused by a hurricane may not be covered under her homeowner's policy.  (*Id.*).  Additionally, plaintiff alleges that Cosse was negligent and/or breached the parties' agreement by failing to procure adequate insurance, including both property and flood insurance.  (*Id.* at ¶ XVIII).  State Farm moves to remand on the ground that the nondiverse defendant Cosse is improperly joined because plaintiff is unable to establish a cause of action against him.  (Rec. Doc. 8).  In the alternative, State Farm asserts that plaintiff's claims are perempted under La. Rev. Stat. § 9:5606.  (*Id.*).

The Court finds that plaintiff fails to state an actionable claim against Cosse under Louisiana law.  Cosse's unrebutted affidavit indicates that he offered plaintiff the option of purchasing flood insurance when she purchased her homeowner's

15

policy on February 2, 2004.  (Rec. Doc. 8, Ex. A).  According to
Cosse, plaintiff declined flood insurance at that time, even
though Cosse informed her that the homeowner's policy did not
cover flood damage.  (*Id.*).  Moreover, Cosse attests that
plaintiff never requested that he procure a flood insurance
policy before Hurricane Katrina.  (*Id.*).  Plaintiff offers no
evidence to rebut Cosse's affidavit, nor does she point to any
language in her homeowner's policy that contradicts any of
Cosse's statements.  Further, the Court finds that Cosse could
not be liable for failing to advise plaintiff of the option to
purchase "excess" flood insurance because she did not have basic
coverage for floods to which another policy would be "excess."
Thus, she could not have obtained excess flood coverage, even if
he advised her that it existed.  Because plaintiff has not come
forward with any evidence to suggest there is any merit to her
claims, the Court finds that plaintiff does not have a reasonable
possibility of recovery against Cosse, and joinder is thus
improper.  The Court has jurisdiction over this matter.

>    **D.    06-7678: Kobeszko v. State Farm**

Plaintiffs Andrew Kobeszko, Elizabeth Kobeszko, and Abek,
Inc. sued State Farm and Garcia Insurance Agency seeking damages
for the destruction of their property as a result of Hurricane
Katrina.  The Kobeszkos initially purchased both flood and

homeowner's insurance from Garcia in 1992, but declined flood insurance covering their contents. (Rec. Doc. 10, Ex. B, ¶¶ 5-9). These policies were annually renewed without change, with two exceptions. On November 2, 1993, the Kobeszkos increased the flood insurance coverage on their home from $95,634 to $104,200. (*Id.* at ¶ 10). On January 4, 2002, the Kobeszkos decreased their homeowner's policy coverage from $192,000 to $144,000. (*Id.* at ¶ 12). Abek initially purchased a business policy through State Farm in 2001, which provided $20,000 in contents coverage. (*Id.* at ¶ 11). In January 2003, the contents coverage was increased to $61,200. (*Id.* at ¶ 15). The policy was renewed annually thereafter without change.

In their complaint, plaintiffs allege that Garcia is liable for losses of personal property they suffered as a result of Hurricane Katrina flooding their properties because he failed to procure flood contents coverage for their home or business.[5] (Rec. Doc. 1, Ex. A, ¶ 5). Plaintiffs additionally allege that Garcia owed a duty of reasonable diligence to them, which he breached by failing to review the adequacy of plaintiffs' coverage, failing to procure adequate coverage, and/or failing to do what was previously requested of him. (*Id.* at ¶ 21). State

---

[5] The Kobeszkos are seeking $100,000 in damages, while Abek is seeking $63,000 in damages. (Rec. Doc. 1, Ex. A, ¶¶ 17-18).

Farm contends that Garcia is improperly joined because there is no reasonable basis upon which plaintiff can state a claim under Louisiana law against him.  More specifically, defendants allege that plaintiffs' claims against Garcia are perempted under La. Rev. Stat. § 9:5606.

Based on the allegations set forth in plaintiffs' state court petition, the Court finds that their claims against Garcia are perempted.  As noted above, the Kobeszko's homeowner's policy was materially changed in January 2002.  Abek's business policy was last altered in January 2003.  However, since these changes were made, the unrebutted evidence shows that Garcia has not engaged in any further substantive discussions with plaintiffs regarding their policies.[6]  (Rec. Doc. 10, Ex. B, ¶¶ 19-20).  The peremptive period regarding plaintiffs' policies therefore would have started to run, at the latest, in January 2003.  Because this matter was not filed in state court until August 29, 2006, the claims against Garcia are barred under the three-year peremption set forth in La. Rev. Stat. § 9:5606.  Accordingly,

_____

[6] As mentioned in plaintiff's petition, Garcia acknowledges having a conversation with Mr. Kobeszko in August 2004.  (Rec. Doc. 10, Ex. B, ¶ 21).  At this time, Mr. Kobeszko requested that Garcia give him a quote for a new office building being constructed for the Kobeszkos.  (*Id.*)  Garcia, however, did not write this policy.  (*Id.*)  As a result, the Court finds that Mr. Kobeszko's mere request for a quote did not alter his current insurance policies in any way and therefore cannot suffice to restart peremption.

18

the Court finds that plaintiffs have no reasonable possibility of recovery against Garcia.  Thus, Garcia's joinder is improper and the Court has jurisdiction over this matter.

**IV.  CONCLUSION**

For the foregoing reasons, the Court GRANTS plaintiffs' motion in Civ. Docket No. 06-7385, and DENIES the other motions.

New Orleans, Louisiana, this <u>31st</u> day of January, 2007.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

19